FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEOPLE OF THE STATE OF
CALIFORNIA, acting by and
through Los Angeles County Counsel
Dawyn R. Harrison,

   *Plaintiff - Appellee*,

 v.

EXPRESS SCRIPTS, INC.; ESI
MAIL PHARMACY SERVICE,
INC.; EXPRESS SCRIPTS
PHARMACY, INC.; OPTUMRX,
INC.,

   *Defendants - Appellants*,

and

EXPRESS SCRIPTS
ADMINISTRATORS,
LLC, MEDCO HEALTH
SOLUTIONS,
INC., OPTUMINSIGHT,
INC., OPTUMINSIGHT LIFE
SCIENCES, INC.,

   *Defendants*.

No. 24-1972

D.C. No.
2:23-cv-08570-
SPG-PD

OPINION

Appeal from the United States District Court
for the Central District of California
Sherilyn Peace Garnett, District Judge, Presiding

Argued and Submitted March 4, 2025
Pasadena, California

Filed September 8, 2025

Before: Mary H. Murguia, Chief Judge, and Gabriel P.
Sanchez and Holly A. Thomas, Circuit Judges.

Opinion by Judge Murguia

## SUMMARY[*]

### Federal Officer Removal

The panel affirmed the district court's order remanding
to state court an action brought by the People of the State of
California against Express Scripts, Inc., and other pharmacy
benefit managers.

Plaintiff alleged statutory and common law public
nuisance causes of action relating to the opioid epidemic in
Los Angeles County.  Defendants removed to federal court
under 28 U.S.C. § 1442(a)(1), the federal officer removal
statute, averring that their business dealings with various
United States agencies should enable removal.  Plaintiff

---

[*] This summary constitutes no part of the opinion of the court.  It has
been prepared by court staff for the convenience of the reader.

amended its complaint in federal court to add a comprehensive disclaimer, explicitly narrowing the claims to defendants' conduct related to the non-federal market and only seeking relief for the same. After determining that the explicit disclaimer eliminated defendants' ground for removal, the district court remanded the case.

The panel concluded that the district court correctly determined that plaintiff, as master of its complaint, validly eliminated all bases for federal jurisdiction through its disclaimer. As a result of the disclaimer, defendants did not satisfy the causal nexus prong of the federal officer removal statute because none of the conduct charged in the amended complaint causally related to actions defendants took under a federal officer. Under *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22 (2025), the district court properly remanded the case to state court after determining that it lacked subject matter jurisdiction.

## COUNSEL

Louis M. Bograd (argued), Elizabeth Smith, and Linda Singer, Motley Rice LLC, Washington, D.C.; Andrea Ross, Principal County Counsel; Scott Kuhn, Assistant County Counsel; Dawyn R. Harrison, County Counsel; Office of the County Counsel, Los Angeles, California; for Plaintiff-Appellee.

Christopher G. Michel (argued), Jonathan G. Cooper, and Michael J. Lyle, Quinn Emanuel Urquhart & Sullivan LLP, Washington, D.C.; Kiel B. Ireland, Danielle L. Gilmore, and Sage R. Vanden Heuvel, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; Charles B. Straut II,

Quinn Emanuel Urquhart & Sullivan LLP, San Francisco, California; Omar Morquecho, Kimberly K. Chemerinsky, and Alexander Akerman, Alston & Bird LLP, Los Angeles, California; Brian D. Boone and Matthew P. Hooker, Alston & Bird LLP, Charlotte, North Carolina; for Defendants-Appellants.

## OPINION

MURGUIA, Chief Circuit Judge:

This litigation arises in the context of decades of lawsuits brought nationwide by states, localities, and Indian tribes against various opioid industry defendants. The People of the State of California, acting by and through Los Angeles County Counsel, Dawyn R. Harrison, ("Plaintiff" or "the People"), originally brought suit against Defendants-Appellants Express Scripts, Inc.; ESI Mail Pharmacy Service, Inc.; Express Scripts Pharmacy, Inc.; and OptumRx, Inc. ("Defendants") in California state court alleging statutory and common law public nuisance causes of action. Defendants removed to federal court under 28 U.S.C. § 1442(a)(1)—commonly known as the federal officer removal statute—averring that their business dealings with various United States agencies should enable removal under the statute. Plaintiff amended its complaint in federal court to add a comprehensive disclaimer, explicitly narrowing its claims to Defendants' conduct related to the non-federal market and only seeking relief for the same. Plaintiff then moved to remand. After determining that the explicit disclaimer eliminated

Defendants' ground for removal, the district court remanded the case.

Defendants on appeal challenge the district court's remand order, arguing that no disclaimer in this instance could validly sever Defendants' grounds for jurisdiction under the federal officer removal statute. We disagree. The district court correctly determined that Plaintiff, as master of its complaint, validly eliminated all bases for federal jurisdiction through its disclaimer. As a result, Defendants do not satisfy the causal nexus prong of the federal officer removal statute because none of the conduct charged in the amended complaint causally relates to actions Defendants took under the direction of a federal officer.

## I.

Defendants are known as pharmacy benefit managers ("PBMs"). They administer prescription-drug benefits, process insurance claims, and provide mail order pharmacy services for private businesses and government agencies. Essentially, they "serve as intermediaries between prescription-drug plans and the pharmacies that beneficiaries use." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83–84 (2020). As part of their services, PBMs offer formularies to health plans, which are lists of generic and brand name prescription drugs covered by a health plan's insurance benefits. In addition to manufacturers, distributors, and dispensers of opioids, PBMs occupy a unique role in the pharmaceutical supply chain as "third-party administrators of prescription drug programs." *Trone Health Servs., Inc. v. Express Scripts Holding Co.*, 974 F.3d 845, 848 (8th Cir. 2020).

Plaintiff filed a complaint in the Superior Court of California for the County of Los Angeles against Defendants

alleging their opioid dispensing practices substantially contributed to the public nuisance of the opioid epidemic in Los Angeles County in violation of common law public nuisance doctrine and the California public nuisance statute. Cal. Civ. Code §§ 3479, 3480. Defendants removed to federal court under the federal officer removal statute. 28 U.S.C. § 1442(a)(1). In its notice of removal, Defendant Express Scripts cited its contracts to provide PBM services for the United States Department of Defense's ("DoD") TRICARE program and for the Office of Personnel Management's ("OPM") Federal Employees Health Benefits Program. Optum cited to its contract with the Department of Veterans Affairs to provide PBM services to the Veterans Health Administration.

Plaintiff amended its complaint in federal court to add a comprehensive disclaimer, explicitly narrowing its claims to Defendants' conduct related to the non-federal market and only seeking relief for the same. Plaintiff's disclaimer stated in relevant part:

> The allegations in this Complaint do not include and specifically exclude Defendants' provision of PBM or mail order pharmacy services pursuant to contracts with the Department of Defense, the Office of Personnel Management, the U.S. Department of Veteran Affairs, the Veterans Health Administration, or any other federal agency. The Complaint does not challenge the creation of custom formularies or administration or management of such formularies for or by a federal officer or federal agency, such as for any Federal

Employees Health Benefits Act, Veterans Health Administration, or TRICARE governed health benefits plan, or any other federal health benefit plan. The Complaint does not challenge Defendants' provision of mail order pharmacy services pursuant to contracts with the Department of Defense, the Office of Personnel Management, U.S. Department of Veterans Affairs, the Veterans Health Administration, or any other federal agency, and does not challenge the Defendants' administration or operation of the TRICARE Home Delivery/Mail Order Pharmacy. The Plaintiff does not seek to recover moneys paid by the federal government pursuant to such plans, nor does it seek recovery of federally mandated co-pays that were paid by such plans' patients. The Plaintiff does not challenge opioid prescriptions adjudicated or processed by Defendants under federal contracts. The Plaintiff does not seek declaratory relief, injunctive relief, abatement relief, or any other relief for the conduct of Defendants related to the provision of any services pursuant to contracts with the Department of Defense, the Office of Personnel Management, the U.S. Department of Veteran Affairs, the Veterans Health Administration, or any other federal agency.

Plaintiff then moved to remand, arguing it had excised all bases for federal officer jurisdiction from its amended complaint.

In opposition to remand, Defendants argued that Plaintiff's disclaimer was invalid, but that even if it was permissible, the charged conduct in Plaintiff's amended complaint still at least satisfied the "relating to" element of the federal officer removal statute.  Defendants' opposition to remand included a declaration from Express Scripts employee, Thomas D. Jenkins ("Jenkins Declaration"), which averred that:

> Express Scripts contracts with pharmacies to participate in its pharmacy networks and negotiates discounts from those contracted pharmacies that reduce the cost to Express Scripts' clients of the drugs dispensed by contracted pharmacies.  Express Scripts does not negotiate separate agreements with retail pharmacies for each of its thousands of clients.  Rather, Express Scripts negotiates with retail pharmacies to participate in a multitude of Express Scripts pharmacy networks, including networks for commercial clients as well as TRICARE.

The Jenkins Declaration also stated that "pursuant to DoD directives, these retail pharmacies must meet certain credentialing standards . . . [and] are required to provide the same quality of services they provide to commercial beneficiaries."[1]

After determining that the explicit disclaimer eliminated Defendants' ground for removal, the district court remanded

---

[1] Defendants' briefing and notice of removal describe Optum's PBM practices as similar to this in all material respects.

the case. *California ex rel. Harrison v. Express Scripts, Inc.*, No. 2:23-cv-08570-SPG-PD, 2024 WL 841197, at *5 (C.D. Cal. Feb. 28, 2024). [2]  Defendants appealed the district court's remand order. [3]

## II.

We have jurisdiction to review a district court's order remanding a case to state court when defendants removed the case to federal court pursuant to the federal officer

---

[2] The district court first held that even in the absence of the explicit disclaimer, Defendants' relationships with the federal government were merely "arm's length business arrangement[s]" and that Defendants were merely complying with the law, which "does not amount to acting under a federal official who is giving an order or enforcing the law." *California ex rel. Harrison*, 2024 WL 841197, at *4 (quoting *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 757 (9th Cir. 2022) (citation modified)).  Defendants highlight that the district court did not cite or analyze a Fourth Circuit opinion in a similar opioid public nuisance case against many of these same defendants where that court found the case removable under the federal officer removal statute.  *Cnty. Bd. of Arlington Cnty., Virginia v. Express Scripts Pharmacy, Inc.*, 996 F.3d 243, 257 (4th Cir. 2021).  But the plaintiff in *County Board of Arlington* did not include an explicit disclaimer limiting their complaint to the non-federal market.

Accordingly, we do not address whether the People's amended complaint here, absent the disclaimer, could have qualified for federal officer removal.  We affirm the district court solely on the basis that the People's explicit disclaimer validly severed from their claims all grounds for federal officer jurisdiction in this case.

[3] Defendants also appealed the district court's denial of a motion to stay remand pending appeal and asked this Court to expeditiously issue an automatic stay of the remand order pursuant to *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).  In a separate published order issued prior to this opinion, we affirmed the district court's denial of the motion to stay remand pending appeal.  *California ex rel. Harrison v. Express Scripts, Inc.*, 139 F.4th 763, 773 (9th Cir. 2025).

removal statute.  *DeFiore v. SOC LLC*, 85 F.4th 546, 552 (9th Cir. 2023) (citing 28 U.S.C. § 1447(d)).  This Court reviews *de novo* a district court's decision to remand a case. *Id.*

### III.

The district court properly determined that the People's disclaimer eliminated Defendants' basis for federal officer removal and remanded the case.  The Supreme Court's decision in *Royal Canin U. S. A., Inc. v. Wullschleger*, issued during the pendency of this appeal, reinforces the district court's conclusion.  604 U.S. 22, 28 (2025).  "'If at any time before final judgment it appears that the district court lacks subject matter jurisdiction,' the case must be 'remanded' to state court."  *Id.* (quoting 28 U.S.C. § 1447(c)) (citation modified). [4]  Plaintiff, as "the master of the complaint" excised the basis for federal jurisdiction with its disclaimer, which made remand necessary.  *Id.* at 35 (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398–99 (1987)). Federal courts across the country have frequently recognized disclaimers, such as the one here, as a mechanism available to plaintiffs who wish to limit their complaints and avoid federal jurisdiction.  *See Gov't of Puerto Rico v. Express*

---

[4] Defendants originally argued that the district court should have retained jurisdiction because Plaintiff's complaint *at the time of removal* (i.e. prior to the inclusion of the disclaimer) at least satisfied the "relating to" component of the federal officer removal statute.  But Defendants withdrew that argument after the Supreme Court decided *Royal Canin* and clarified that when a plaintiff amends her complaint to delete the only claims that enabled removal to federal court, the federal court loses supplemental jurisdiction and the case *must* be remanded to state court. 604 U.S. at 25–26.  Therefore, we only review arguments based on Plaintiff's amended complaint, which includes the disclaimer.

*Scripts, Inc.*, 119 F.4th 174, 186–87 (1st Cir. 2024) (surveying cases).

With the disclaimer, Defendants cannot satisfy the causal nexus prong of the federal officer removal statute. In other words, Plaintiff's effective disclaimer prevents Defendants from demonstrating that Plaintiff's claims are causally related to any actions Defendants allege were taken under federal direction, as required by 28 U.S.C. § 1442(a)(1). Defendants stress that the Court must credit Defendants' "theory of the case" when "assessing whether a causal connection exists" for the purposes of federal officer removal. *Leite v. Crane Co.*, 749 F.3d 1117, 1124 (9th Cir. 2014). But the Court need not credit Defendants' incorrect interpretation of the elements of California public nuisance law nor their implausible reading of Plaintiff's amended complaint. Defendants' theory of the case—specifically that the "community-wide nature of Plaintiff's public nuisance claim cannot be reconciled with Plaintiff's purported disclaimer of certain aspects of those same claims," Defs' Opening Br. 33—is not supported by the text of the public nuisance statute nor the caselaw interpreting it. *See Leite*, 749 F.3d at 1121 (equating the standard for challenging the existence of removal jurisdiction with the standard for making a viable motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)).

Furthermore, Defendants' arguments that Plaintiff's claims, despite the disclaimer, still satisfy the federal officer removal statute's "relating to" element when analyzed under the "causal nexus" prong are unavailing. *See DeFiore*, 85 F.4th at 557 n.6. Defendants' notice of removal does not demonstrate that their opioids business activity on behalf of non-federal clients was taken under the direction of a federal officer, nor that any business activity allegedly directed by a

federal officer causally related to the conduct charged in Plaintiff's amended complaint. And unlike the conduct at issue in the cases Defendants offer, the actions Defendants took in relation to their federal and non-federal clients were not inextricably intertwined. Accordingly, the district court properly remanded this case.[5]

## A.

Two overarching maxims recently reaffirmed by the Supreme Court in *Royal Canin* guide our approach to this case. First, federal courts are courts of limited jurisdiction and "[w]hen they do not have (or no longer have) authorization to resolve a suit, they must hand it over." 604 U.S. at 26, 28. This principle applies equally in the context of the federal officer removal. Even though the removal statute must be "liberally construed," *Colorado v. Symes*, 286 U.S. 510, 517 (1932), its "broad language is not limitless," *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007). "[A] liberal construction nonetheless can find limits in a text's language, context, history, and purposes." *Id.*

Second, a plaintiff, as master of the complaint, "gets to determine which substantive claims to bring against which defendants . . . [to] establish—or not—the basis for a federal court's subject-matter jurisdiction." *Royal Canin*, 604 U.S.

---

[5] Further supporting remand, the California superior court presiding over this matter has already indicated its intent to hold the People to their disclaimer. In a footnote to its order overruling Defendants' demurrer, the court stated that "[i]f Plaintiff tries to renege in the future, the Court would be inclined to enforce the disclaimer," through judicial estoppel. *People of the State of California v. Express Scripts, Inc., et al.*, No. 23STCV20886, at 18 n.5 (Cal. Super. Ct. Dec. 17, 2024). This shows that California courts are holding Plaintiff to its word and protecting Defendants' rights.

at 35; *see also Caterpillar*, 482 U.S. at 392; *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 809 n.6 (1986) ("Jurisdiction may not be sustained on a theory that the plaintiff has not advanced."); *Great N. Ry. Co. v. Alexander*, 246 U.S. 276, 282 (1918) ("[T]he plaintiff may by the allegations of his complaint determine the status with respect to removability of a case . . . ."). Therefore, "[w]hen a plaintiff, after removal, cuts out all her federal-law claims, federal-question jurisdiction dissolves. And. . .supplemental jurisdiction over the residual state claims disappears as well." *Royal Canin*, 604 U.S. at 54–55.

We are also guided by the analytical framework of the federal officer removal statute. Section 1442(a)(1) permits a "person" to remove "[a] civil action . . . that is commenced in a State court and that is against" that person if that person is an "officer (or any person acting under that officer) of the United States or of any agency thereof" and is sued "in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1) (citation modified). To satisfy this requirement, a removing private entity bears the burden of showing that "(a) it is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Goncalves ex rel. Goncalves v. Rady Child.'s Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) (quoting *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006)).[6] To prove the causal

---

[6] A "person" includes a corporation and a limited liability company, such as Defendants here. *Goncalves*, 865 F.3d at 1244.

Defendants assert that they could allege colorable federal contractor and preemption defenses, but do not explain any further in their briefing.

nexus prong, Defendants must demonstrate two subsidiary requirements: (1) that they were acting under a federal officer in performing some act under color of federal office, and (2) that such action is causally connected with Plaintiff's claims against them. *DeFiore*, 85 F.4th at 554 (quoting *Cnty. of San Mateo*, 32 F.4th at 755; citing *Goncalves*, 865 F.3d at 1244–50) (quotation marks omitted). "The purpose of the federal officer removal statute is 'to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his duties.'" *Goncalves*, 865 F.3d at 1244 (quoting *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981)).

Congress amended § 1442(a)(1) in 2011 adding the clause, "or relating to," to the statute so that removal is authorized if the state court suit is one "for *or relating to* any act under color of such office." *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(2), 125 Stat. 545, 545 (2011) (emphasis added); *see also Goncalves*, 865 F.3d at 1250. Congress intended for this amendment to broaden the application of the federal officer removal statute. *Goncalves*, 865 F.3d at 1250. Courts have interpreted "relating to" as meaning "in association with or connection with" the charged conduct in a plaintiff's complaint. *Puerto Rico*, 119 F.4th at 186 (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383–84 (1992)). In this circuit, the "causal nexus" analysis "incorporat[es] the 'connected or associated with' standard reflected in Congress's 2011 amendment and the Supreme Court's decisions." *DeFiore*, 85 F.4th at 557 n.6 (citing *Goncalves*, 865 F.3d at 1244–45).

---

Because Defendants have not satisfied their burden of showing a causal nexus, we do not address whether Defendants' alleged federal defenses are colorable.

With this background in mind, we uphold the validity of Plaintiff's disclaimer and conclude that Defendants' theory of the case is insufficient to trigger federal officer removal.

## B.

Plaintiff here mounts a facial challenge to Defendants' notice of removal.  *Leite v. Crane Co.* guides our evaluation of facial challenges to removal jurisdiction in the federal officer removal context.  749 F.3d at 1121.  We explained in *Leite* that courts adjudicating whether defendants have established subject matter jurisdiction under § 1442(a)(1) should look to the "procedurally analogous context" of Federal Rule of Civil Procedure 12(b)(1).  749 F.3d at 1121.  "To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'"  *Dart Cherokee Basin Operating Co., LLC. v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)).   Because that "short and plain statement" requirement of the removal statute "tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure," the same pleading standards applicable to complaints under Rule 8 also apply to the jurisdictional allegations in a notice of removal.  *Id.* at 87.  Accordingly, the removal notice "must allege facts, not mere legal conclusions, in compliance with the pleading standards established by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)."  *Leite*, 749 F.3d at 1121.   Where, as here, Plaintiff's motion to remand facially challenges the jurisdictional validity of a removal notice and does not rely on an evidentiary showing, the remand motion is resolved by assessing whether the jurisdictional allegations in the removal notice meet the

pleading standards that courts normally apply when deciding a "motion to dismiss under Rule 12(b)(6)."**[7]** *Id.*

The analogy to the Rule 12(b)(6) context, however, has some caveats. When a court is adjudicating a Rule 12(b)(6) motion to dismiss, it only has the allegations in the plaintiff's complaint that it must take as true. *See Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013). When a court adjudicates a motion to remand in the federal officer removal context, by contrast, it has to both "credit the defendants' theory of the case" as laid out in the notice of removal and supporting documentation, *Leite*, 749 F.3d at 1124, while also taking the allegations in plaintiff's complaint as true. In other words, defendants' theory of the case must be understood in relation to the allegations contained in the plaintiff's complaint. In the process of crediting defendants' theory of the case, a court is not free to disregard or rewrite the allegations plaintiff has chosen to include in its complaint. *See Royal Canin*, 604 U.S. at 35 (emphasizing that a plaintiff "gets to determine which substantive claims to bring against which defendants" to establish or eliminate the basis for a federal court's subject matter jurisdiction).

Plaintiff's disclaimer here clearly and definitively limited its claims and the recovery it seeks to Defendants' work on behalf of its non-federal clients. We arrive at this conclusion after surveying cases across the country involving permissible and impermissible disclaimers. These

---

[7] While the parties did not specify whether Plaintiff mounted a facial or factual attack on Defendants' notice of removal, it is clear from the briefing that Plaintiff contests the plausibility of Defendants' theory of the case as opposed to the accuracy of Defendants' factual submissions. Accordingly, we construe Plaintiff's challenge to Defendants' removal as a facial attack.

federal court decisions have begun to articulate a disclaimer doctrine in the federal officer removal context. *Puerto Rico*, 119 F.4th at 186. To prevent a defendant from removing under the federal officer removal statute, plaintiffs may disclaim in their complaint claims that would serve as the basis for removal. *See St. Charles Surgical Hosp., LLC v. La. Health Serv. & Indem. Co.*, 990 F.3d 447, 451 (5th Cir. 2021). Disclaimer doctrine generally distinguishes between two categories of § 1442(a)(1) disclaimers: (1) "express disclaimers of the claims that serve as the grounds for removal"; and (2) "artful pleading for purposes of circumventing federal officer jurisdiction." *Puerto Rico*, 119 F.4th at 187 (quoting *Dougherty v. A O Smith Corp.*, No. 13-1972, 2014 WL 3542243, at *10 (D. Del. July 16, 2014)); *see St. Charles Surgical Hosp.*, 990 F.3d at 451. The former is permissible while the latter is not.

To defeat removal, an express disclaimer must explicitly renounce claims upon which federal officer removal was based. *Puerto Rico*, 119 F.4th at 187. If a plaintiff renounces the portions of its claims that implicate actions taken pursuant to or in relation to directions from a federal officer, then a defendant is not entitled to "a federal forum" in which "to raise a defense arising out of his official duties." *Manypenny*, 451 U.S. at 241. Defendants cannot assert a defense to claims, "that simply do not exist." *Batchelor v. Am. Optical Corp.*, 185 F. Supp. 3d 1358, 1364–65 (S.D. Fla. 2016) (citation modified); *see also Puerto Rico*, 119 F.4th at 187. In this sense, permissible express disclaimers can do the work of rendering a federal defense moot.

Impermissible disclaimers are those that amount to "mere artful pleading" and come in different types. *Puerto Rico*, 119 F.4th at 187 (citation modified). A "circular" disclaimer is one that tries to broadly disclaim the question

of causal nexus at the core of the federal officer removal inquiry. *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266, 1274–75 (S.D. Fla. 2008). For example, the circular disclaimer in *Marley* read:

> Every claim arising under the Constitution, treaties, or laws of the United States is expressly disclaimed (including any claim arising from an act or omission on a federal enclave, or any federal office of the U.S. or agency or person acting under him occurring under color of such office.)

*Id.* at 1274. The *Marley* disclaimer did not meaningfully excise any factual basis or waive any legal grounds for federal officer removal jurisdiction. *Id.* Instead, it tried in a circular manner to disclaim the very legal question central to the federal officer removal inquiry in the case.

Another type of impermissible disclaimer can be understood as an impossible disclaimer. This type of disclaimer purports to disavow claims based on a defendant's acts or omissions that make up the entirety of plaintiff's case or a core component of the plaintiff's claims. *See, e.g.*, *Batchelor*, 185 F. Supp. 3d at 1363; *see Puerto Rico*, 119 F.4th at 188. For example, in *In re Asbestos Products Liability Litigation (No. VI)*, plaintiffs tried to disclaim any claims "caused by the acts or omissions of defendants committed at the specific and proven direction of an officer of the United States government acting in his official capacity." 770 F. Supp. 2d 736, 740 (E.D. Pa. 2011). But the core of the plaintiffs' claim against the defendant arose "from exposure on U.S. Naval ships at U.S. Naval shipyards, for which Defendant has a 'colorable' federal

defense," as described by various declarations proffered by the defendant. *Id.* at 742. Therefore, the disclaimer would have vitiated the plaintiffs' entire claim against the defendant, making the claim impossible.

In the case before us, Plaintiff's disclaimer explicitly renounces claims upon which federal officer removal was alleged. *See Batchelor*, 185 F. Supp. 3d at 1363–64. The disclaimer makes clear that Plaintiff is not challenging the actions of Defendants taken in relation to their federal clients by specifically excluding Defendants' provision of PBM or mail order pharmacy services pursuant to all federal contracts. The disclaimer excludes any challenge to the creation and administration of formularies for all federal clients. And the disclaimer explicitly waives any request for abatement relief, or any other form of relief for Defendants' actions taken pursuant to their federal contracts. The disclaimer is precise and comprehensive in limiting all factual and legal bases for recovery based on Defendants' federal client work. It is therefore a permissible disclaimer under the disclaimer doctrine.

Defendants argue that the "community-wide nature of Plaintiff's public nuisance claim cannot be reconciled with Plaintiff's purported disclaimer of certain aspects of those same claims." Defs' Opening Br. 33. But Defendants misread the text of the public nuisance statute, misinterpret the public nuisance caselaw, and advance an implausible reading of Plaintiff's amended complaint. We discuss these points below.

Defendants argue that the California Supreme Court has described a public nuisance as a violation of a "public right" that is "collective in nature," *People ex rel. Gallo v. Acuna*, 929 P.2d 596, 604 (Cal. 1997), and therefore must affect an

entire community.  Defendants next argue, without citing caselaw, that  as "a matter of law and common sense, a claim that requires that *all members* of a community be affected cannot be narrowed by *excluding some members* of that community."  Defs' Opening Br. 33 (emphasis in original).  Under this interpretation of public nuisance, Plaintiff's disclaimer limiting its claims only to the non-federal market would be a type of impossible disclaimer.  But Defendants misunderstand the elements required to prove a public nuisance claim in California and advance an implausible reading of Plaintiff's amended complaint.

California Civil Code section 3479 defines a nuisance as "[a]nything which is injurious to health, including, but not limited to, the illegal sale of controlled substances, . . . so as to interfere with the comfortable enjoyment of life or property."  Cal. Civ. Code § 3479.  Section 3480, in turn, states that a "public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . . ."  Cal. Civ. Code § 3480.  The statute does not define what constitutes "an entire community," but includes within its definition "any considerable number of persons."  *Id.*  California courts require that a public nuisance cause of action be "established by proof that a defendant knowingly created or assisted in the creation of a substantial and unreasonable interference with a public right."  *People v. ConAgra Grocery Prods. Co.*, 227 Cal. Rptr. 3d 499, 525 (Cal. Ct. App. 2017).

Defendants argue that the public nuisance statute requires a "community-wide" analysis, which somehow necessitates including all of Defendants' actions for both private and federal entities.  This novel interpretation of California public nuisance law is not supported by the text of the statute nor caselaw.  Cal. Civil Code § 3480 makes

explicit that a public nuisance need not affect all members of a community; it is sufficient if it affects "any considerable number of persons."  Cal. Civil Code § 3480.  Plaintiff can therefore allege public nuisance claims solely against Defendants' non-federal business activity and still plausibly plead the required elements of the public nuisance statute.

California's public nuisance statute does not require that a plaintiff challenge the entire business practice of a corporation that has allegedly contributed to a public nuisance.  Instead, a plaintiff need only proffer substantial evidence to sustain a finding of an unreasonable interference with a public right.  *See ConAgra Grocery Prods.*, 227 Cal. Rptr. 3d at 526.  Many players can contribute to a public nuisance and a plaintiff is not required by law to sue them all.  Tellingly, Defendants cite neither statutory text nor caselaw to support their interpretation.

By contrast, caselaw interpreting the California public nuisance statute supports the People's theory of the case as pled in the amended complaint.  The People have alleged facts that Defendants' non-federal business activity alone was "a substantial factor in bringing about" the public nuisance of the opioid epidemic in Los Angeles County.  *See id.* at 543.  "The substantial factor standard is a relatively broad one, requiring only that the contribution of the individual cause be more than negligible or theoretical." *Rutherford v. Owens-Illinois, Inc.*, 941 P.2d 1203, 1220 (Cal. 1997).  "[A] force which plays only an infinitesimal or theoretical part in bringing about injury, damage, or loss is not a substantial factor, but a very minor force that does cause harm is a substantial factor."  *Bockrath v. Aldrich Chem. Co., Inc.*, 980 P.2d 398, 403–04 (Cal. 1999) (internal quotation marks and citation omitted).  "[C]ircumstantial evidence of sufficient substantiality from which reasonable

inferences can be drawn will support a finding of causation in fact." *City of Modesto v. Dow Chem. Co.*, 227 Cal. Rptr. 3d 764, 781 (Cal. Ct. App. 2018) (internal quotation marks and citation omitted).

Defendants try to equate Plaintiff's disclaimer to the type of artful pleading decried by courts in other cases. *See, e.g.*, *St. Charles*, 990 F.3d at 451; *Siders v. 20th Cent. Glove Corp. of Tex.*, 2016 WL 1733473, at *4 (S.D. W. Va. Apr. 29, 2016). The Fifth Circuit in *St. Charles* warned that the plaintiff's disclaimer could be understood as circular. *St. Charles*, 990 F.3d at 451. The plaintiff there waived "relief governed by or available pursuant to . . . any claims involving a federal officer." *Id.* (alteration in original). Though the Fifth Circuit remanded the case to the district court to determine whether the disclaimer was valid in the first instance, the plaintiffs' disclaimer might have amounted to an attempt to disclaim the very legal question central to the federal officer removal inquiry in the case. It was not clear that the plaintiff had expressly and permissibly disclaimed the factual and legal bases for its claims against the defendant and therefore eliminated federal officer removal jurisdiction. *Id.* Plaintiff's disclaimer here, by contrast, expressly disclaims all factual and legal bases for claims against Defendants' related to their federal work, and therefore does not suffer from circularity in its construction.

Defendants also cite *Baker v. Atlantic Richfield Co.*, 962 F.3d 937, 939–40, 945 n.3 (7th Cir. 2020), which dealt with an impossible disclaimer. There, plaintiffs suing various manufacturers for lead and arsenic contamination tried to disclaim any challenges to the production of Freon-12, which the manufacturers allegedly produced under the direction of the government. *Id.* But the defendants proffered evidence that Freon-12 production created waste

streams that contained lead and arsenic. *Id.* Therefore, the plaintiffs' attempt to disclaim challenges to Freon-12 production would have made their claims relating to lead and arsenic contamination impossible. Plaintiff here did not try to artfully plead its way out of federal jurisdiction in a manner that made its claims impossible. Plaintiff explicitly released Defendants from all liability that might have stemmed from work for federal agencies. As described above, Plaintiff's lawsuit can still proceed against Defendants for their non-federal work.

In sum, if, and only if, Plaintiff can proffer sufficient evidence that Defendants' non-federal business activities substantially contributed to the opioid epidemic in Los Angeles County could a court find Defendants liable. *See City & Cnty. of San Francisco v. Purdue Pharma L.P.*, 620 F. Supp. 3d 936, 1004 (N.D. Cal. 2022). Even with the disclaimer in its amended complaint, Plaintiff could still theoretically prove that Defendants' business impacts from its non-federal clients have substantially contributed to the opioid epidemic across all of Los Angeles County. Success on this claim will be a question of volume and sufficiency of the evidence. Only if Plaintiff succeeds in proving that Defendants are liable for creating a public nuisance can the state court adjudicate the arguments and evidence concerning abatement—i.e. to what extent Defendants must abate any public nuisance caused by their non-federal business activities alone.

## C.

Defendants next argue that even if Plaintiff's disclaimer is valid, Defendants' work for federal agencies is still "related to" their work on behalf of their non-federal clients such that federal officer removal subject matter jurisdiction

should attach.  As discussed above, the "relating to" element of the federal officer removal statute is analyzed under the causal nexus prong.    *DeFiore*, 85 F.4th at 557 n.6; *Goncalves*, 865 F.3d at 1244–45.  To establish such a causal nexus, Defendants must demonstrate two subsidiary requirements: (1) that they were acting under a federal officer in performing some act under color of federal office, and (2) that such action is causally connected with Plaintiff's claims against them. *DeFiore*, 85 F.4th at 554 (quoting *Cnty of San Mateo*, 32 F.4th at 755; citing *Goncalves*, 865 F.3d at 1244–50) (quotation marks omitted).

To support their claim of relatedness, Defendants advance a variety of theories.  They argue that they provide "indistinguishable services" to their federal and non-federal clients.   Defendants also cite to their retail pharmacy agreements, which are negotiated without distinction between federal and non-federal commercial clients. *See* Jenkins Decl.  Defendants argue that they develop their formularies for the benefit of all clients and Plaintiff's challenge to Defendants' opioid formulary placement for non-federal clients therefore relates to activity Defendants took at the direction of federal clients.  Lastly, Defendants argue that the harms alleged in Plaintiff's amended complaint are impossible to disentangle as between their federal and non-federal work, and that the possibility of a state court having to apportion those harms should trigger the federal officer removal statute.  Defendants' arguments fail to satisfy the causal nexus prong, even when analyzed under the more relaxed "relating to" standard.

## 1.

To begin, Defendants' theory of the case does not satisfy the "acting under" subsidiary requirement of the causal

nexus prong because Defendants do not allege that the federal government directed their combined retail pharmacy negotiations or formulary placement for non-federal clients. *DeFiore*, 85 F.4th at 554.  Defendants have not shown how they took actions on behalf of their non-federal client base under the "subjection, guidance, or control" of a federal officer to help "fulfill . . . basic governmental tasks." *Goncalves*, 865 F.3d at 1245 (quoting *Watson*, 551 U.S. at 151–53) (internal quotation marks omitted); *DeFiore*, 85 F.4th at 554.

Defendants stress that their contracts with the federal government required them to "maintain a nationwide retail pharmacy network" and administer formulary services for the federal agencies.  *See* Jenkins Decl.  But nothing in Defendants' notice of removal, briefing, or Jenkins Declaration specifies how or if a federal officer *directed* Defendants to negotiate their retail pharmacy agreements in any relevant way that affected Defendants' conduct in the non-federal market challenged in Plaintiff's amended complaint.  *Goncalves*, 865 F.3d at 1244–45.  Nor do Defendants argue that a federal officer directed them to administer formularies for non-federal clients in a manner causally connected to Plaintiff's charged conduct.  "Thus, the 'central issue' in the causal nexus analysis—whether a federal officer directed the defendant to take the action challenged—is unmet."  *Lake v. Ohana Mil. Cmtys., LLC*, 14 F.4th 993, 1005 (9th Cir. 2021) (quoting *Riggs v. Airbus Helicopters, Inc.*, 939 F.3d 981, 987 (9th Cir. 2019)).

Even if Defendants could satisfy the "acting under" subsidiary requirement of the causal nexus analysis, their theory also fails the "causal connection" subsidiary requirement.  *See DeFiore*, 85 F.4th at 554.  Defendants stress that they administer the same type of formularies and

provide indistinguishable retail pharmacy services for the benefit of all their clients.  But Defendants' theory of the case does not plausibly demonstrate how the retail pharmacy network and formulary services provided for the benefit of all clients is causally related to Plaintiff's charged conduct limited to the non-federal market.  Just because Defendants engaged in the same *type* of work for federal and non-federal clients does not mean that Defendants' work for federal clients is causally related to the Plaintiff's charged conduct in the non-federal market.  Nor is federal and non-federal work indivisible.  In other words, Defendants do not plausibly allege how, absent the contracts with the federal government, Defendants would have negotiated the retail pharmacy agreements or administered formularies for their non-federal clients in any materially different way.

In sum, Defendants have not shown that their challenged conduct in the non-federal market "occurred *because of* what they were asked to do by the Government."  *Goncalves*, 865 F.3d at 1245 (internal citation and quotation marks omitted) (emphasis in original).  Nor do Defendants show that their actions in the non-federal market "which gave rise to [Plaintiff's] claims resulted from their work for [the federal government]."  *DeFiore*, 85 F.4th at 557 (citing *Jefferson Cnty. v. Acker*, 527 U.S. 423, 433 (1999)).  Accordingly, Defendants have not shown that their work for their non-federal clients satisfied the causal nexus prong of the federal officer removal statute.

## 2.

Defendants' reliance on caselaw from other circuits does not support their position.  First, the insulin-pricing cases Defendants cite differ both factually and legally from Plaintiff's public nuisance claims here.  Plaintiff's public

nuisance claims do not challenge the single negotiated price of a drug via deceptive business practices and unfair competition law claims such as the plaintiffs in the insulin pricing cases.    Second, neither Defendants' business practices nor the alleged harms flowing from those business practices are inextricably intertwined or impossible to disentangle as Defendants allege.    In support of their arguments on this point, Defendants highlighted after oral argument an opinion from the Fourth Circuit, *Maryland v. 3M Company*, 130 F.4th 380 (4th Cir. 2025).  We conclude that *3M* is distinguishable from this case and unpersuasive.  We discuss these points in more depth below.

**a.**

The primary insulin pricing case Defendants rely on in support of their position is *Puerto Rico*, 119 F.4th 174.  Assuming without deciding that the reasoning in *Puerto Rico* is correct and taking the factual allegations as described in the opinion as true, we conclude the case is analytically distinct from the one here and therefore inapplicable.

In *Puerto Rico*, the Commonwealth of Puerto Rico sued PBM defendants for allegedly scheming "to unlawfully inflate insulin prices through rebate negotiations and price setting."  *Id.* at 179.  This, Puerto Rico alleged, violated the Puerto Rican Fair Competition Act.  *Id.* at 181.  Puerto Rico included a disclaimer in its complaint that specified it was "not seeking relief relating to any federal program . . . or any contract related to a federal program."  *Id.*  The defendants removed to federal court pursuant to the federal officer removal statute and the plaintiff moved to remand.  *Id.* at 183–84.

The defendants in the case premised removal on the theory that their PBM services for federal clients were

inextricably intertwined with its PBM services for private entities. *Id.* at 189. Puerto Rico's consumer protection and deceptive business practices claims challenged the price of insulin that was allegedly decided through a negotiation that included all of the defendants' federal and non-federal clients combined. *Id.* at 191. Specifically, defendants' theory of the case was that they negotiated the price of insulin for federal and non-federal plans "in one fell swoop." *Id.* at 191. And Puerto Rico sought damages against the defendants for the allegedly inflated price of insulin that was set during this "<u>one</u> negotiation." *Id.* at 192 (emphasis in original). The defendants averred that they "performed the challenged conduct jointly for private parties and the federal government," which was "indivisible conduct under a federal officer's authority." *Id.* Therefore, the First Circuit determined that the defendants satisfied the federal officer removal statute and that the plaintiffs' disclaimer was essentially impossible because the challenged price of insulin was borne out of a single negotiation that inextricably intertwined the defendants' federal and non-federal books of business. *Id.* at 180.

Here, Plaintiff's public nuisance claim and disclaimer make this case factually and legally distinct. Plaintiff is bringing a public nuisance claim that does not challenge the price of opioid drugs, but the impact of Defendants' non-federal opioid business practices on Los Angeles County. Plaintiff's challenged conduct is not the result of a single negotiation, but Defendants' business practices taken on behalf of non-federal clients that allegedly contributed to the public nuisance of the opioid epidemic across Los Angeles County. While Plaintiff's amended complaint alleges that Defendants' placement of opioids on the formularies formed part of the business practices that substantially contributed

to the opioid epidemic, Defendants do not plausibly allege that formulary placement for federal and non-federal clients was inextricably intertwined.  On the contrary, Defendants' federal and non-federal work is divisible and can be analyzed independently.**[8]**

Moreover, Defendants' declarations and submissions in support of their notice of removal do not allege that formulary negotiations done on behalf of all their non-federal clients were done "under a federal officer's authority."  *See id*.  Defendants simply allege that they provide formulary services for the benefit of all their clients.

---

[8] Defendants also cited *Hawai'i ex rel. Lopez v. CaremarkPCS Health, LLC*, which was another insulin pricing case where the district court initially credited one of the defendants' theory of the case that insulin rebate negotiations for federal and non-federal clients were inextricably intertwined.  No. CV 23-464 LEK-RT, 2024 WL 1907396, at *5-12 (D. Haw. May 1, 2024).  The district court initially rejected the plaintiff's disclaimer that attempted to limit the complaint to the non-federal market as essentially impossible.  *Id.* at *12.  After oral argument in this case before us, however, the *CaremarkPCS* district court issued an order granting the plaintiff's renewed motion to remand after the parties had conducted jurisdictional discovery.  *Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, No. CV 23-464 LEK-RT, 2025 WL 1218598, at *3 (D. Haw. Apr. 28, 2025).  One of the defendants in *CaremarkPCS* admitted that "no federal officer or federal agency has directed that Rebate Negotiations applicable to Federal Health Benefits Programs must be conducted simultaneously with Rebate Negotiations applicable to Non-Federal Health Benefit Programs."  *Id.*  The defendant also testified that "no federal officer or federal agency has directed that Rebate Negotiations applicable to Federal Health Benefit Programs must be applied to Non-Federal Health Benefit Programs."  *Id.*  Accordingly, the *CaremarkPCS* district court determined that the defendants no longer satisfied the causal nexus prong of the federal officer removal statute, found the plaintiff's amended disclaimer valid, and remanded the case.  *Id.* at *3, *11.  Defendants here, therefore, can no longer rely on this case for support.

*See* Jenkins Decl.  Defendants' theory of the case boils down to the argument that they provided the same *type* of services for federal and non-federal clients.  But that is not enough to demonstrate that Defendants' actions for non-federal clients were causally related to their work done under a federal officer's authority as required by the causal nexus prong of the federal officer removal statute.[9]

The impact of Defendants' alleged contributions to the Los Angeles opioid epidemic through their opioid prescription dispensing practices on behalf of only non-federal clients can, in theory, be proven and calculated at a population level.  California courts have repeatedly held that public nuisance causation "may be predicated on reasonable inferences drawn from circumstantial evidence."  *City of Modesto*, 227 Cal. Rptr. 3d at 781 (quoting *Smith v. Lockheed Propulsion Co.*, 56 Cal. Rptr. 128, 134 (Cal. Ct. App. 1967)).  Further, "[d]irect proof of each link in a chain of causation is not required."  *Id.*  The insulin prices, by contrast, were borne out of a single negotiation involving the defendants' inextricably intertwined federal and non-federal books of business.[10]

---

[9] Counsel for Defendants at oral argument argued that Defendants conduct rebate negotiations indivisibly between their federal and non-federal clients, but neither Defendants' notice of removal, briefing, or the Jenkins Declaration references combined rebate negotiations nor how they fit into Defendants' theory of the case.  Therefore, we deem any arguments about rebates for the purposes of our federal officer removal analysis waived.

[10] The *Puerto Rico* opinion largely tracked the reasoning advanced by Judge Ikuta in her concurrence in *California v. CaremarkPCS Health LLC,* Nos. 23-55597, 23-55599, 2024 WL 3770326, at *1 (9th Cir. Aug. 13, 2024) (mem.), which involved a nearly identical lawsuit brought by the State of California against many of the same defendants challenging

A description of how courts have evaluated public nuisance claims in this context is instructive.  The only federal court in California to have ruled on public nuisance claims against an opioid dispenser held that the "evidence presented at trial support[ed] a reasonable inference that Walgreens dispensed large volumes of illegitimate opioid prescriptions and that it made the opioid epidemic in San

---

the price of insulin.  The majority in *Caremark* held that Plaintiff's disclaimer there did not "*explicitly* release claims or possible recovery from" key aspects of the defendants' work for federal agencies. *Caremark*, 2024 WL 3770326, at *1.  Accordingly, the connection between the defendants' federal work and the plaintiff's claims arguably remained intact sufficient to satisfy the causal nexus element of the federal officer removal statute.  *Id.*  The disclaimer in this case is much more explicit, declaring that "Plaintiff does not seek declaratory relief, injunctive relief, abatement relief, or any other relief for the conduct of Defendants related to the provision of any services pursuant to contracts with" any federal agency.  Accordingly, Plaintiff here has avoided the *Caremark* majority's concerns by severing any causal nexus between Defendants' work for federal agencies and Plaintiff's claims and explicitly releasing claims and possible recovery from Defendants' work for federal agencies.

Judge Ikuta's separate concurrence in *Caremark* concluded the defendant's federal and private sector books of business were inextricably intertwined during negotiations over the price of insulin, which is what Plaintiff's claims challenged.  "[I]f Caremark were liable for negotiating rebates on behalf of private clients, it would necessarily also be liable for negotiating rebates on behalf of the federal government—because it is the same negotiation." *Id.* at *2 (Ikuta, J., concurring).  But for the federal entity book of business being included in the negotiations, Judge Ikuta reasoned, the defendants would not have been able to negotiate the price of insulin that they did.  Accordingly, in Judge Ikuta's perspective, "no disclaimer, however worded, can help California avoid a causal nexus between Caremark's conduct on behalf of the federal government and California's claims." *Id*.  But as explained in this section, this reasoning does not apply to the case before us.

Francisco worse than it otherwise would have been." *Purdue Pharma L.P.*, 620 F. Supp. 3d at 1004. If Plaintiff here can similarly proffer sufficient evidence of Defendants' actions taken solely on behalf of their non-federal clients, they could prove a similar public nuisance claim. This defeats Defendants' attempt to characterize its federal and private businesses as inextricably intertwined for the purposes of the public nuisance analysis.

It is true that, should this case reach the abatement phase, there may be competing statistical analyses and calculations proposed by opposing experts for the amount Defendants' non-federal business practices allegedly contributed to the opioid epidemic. But that is the type of dispute courts are competent to preside over in any number of other mass tort and public nuisance cases. The possibility of such analyses, however, does not make this case akin to *Puerto Rico*, where the First Circuit concluded that the defendant "conduct[ed] one negotiation . . . simultaneously for private clients and the federal government." 119 F.4th at 192 (emphasis in original). Therefore, the First Circuit determined that no disclaimer could eliminate the basis for federal officer removal jurisdiction. *Id.* This key factual distinction between the two cases explains why a disclaimer here is valid and why the *Puerto Rico* court concluded that the disclaimer before it was invalid.

**b.**

Finally, contrary to Defendants' arguments echoed in the Fourth Circuit's interpretation of the federal officer removal statute in *3M*, we conclude that Defendants' work for federal and non-federal business entities is not inextricably intertwined nor "impossible to bifurcate." 130 F.4th at 391. We also determine that a state court calculating abatement

harms in this case would not trigger the federal officer removal statute.  *Id.*  In sum, we reject Defendants' arguments as an attempt to improperly expand the scope of the federal officer removal statute.

Defendants argue that it is not possible to "disentangle" Defendants' work for federal officers from their work relating to non-federal officers.  Defendants also argue that, upon remand, a state court would have to "disentangle" how much of Defendants' work is done on behalf of private versus federal clients, which would function as adjudicating the federal right.  These arguments appear to mirror the Fourth Circuit's holding in *3M*.  But we conclude that neither these arguments nor the reasoning in *3M* are persuasive.

*3M* involved public nuisance claims brought by the States of Maryland and South Carolina ("States") against 3M and other defendants originally in state court alleging that firefighting foam 3M produced for both federal and non-federal clients contaminated various waterways.  130 F.4th at 385.  The States also filed related lawsuits alleging that 3M's non-foam products, which were not manufactured for federal clients, similarly contaminated the same waterways. *Id.* at 385–86.  The defendants removed both sets of cases. The States included an express disclaimer in the non-foam cases to try and limit the scope of their public nuisance claims solely to contamination originating from non-foam products.  *Id.* at 386–87.  This disclaimer resembled the one Plaintiff here included in its amended complaint against Defendants.   The Fourth Circuit panel majority rejected Maryland's disclaimer because the defendants "plausibly alleged" that the contamination from 3M's foam and non-foam products "intermingled to the point that it is impossible to identify their source."  *Id.* at 391.  Accordingly, the Fourth

Circuit held that the federal officer removal statute applied. *Id.* at 392.

The *3M* panel majority's reasoning is not persuasive nor applicable in the case before us.  We conclude it is not "impossible" to separate out the volume of public nuisance harms originating from federal and non-federal sources in both *3M* and our case.  *See id.* at 395–96 (Floyd, J., dissenting).  Looking to other cases, it could be possible to produce statistical models that can accurately calculate proportions of tortious harms attributable to federal versus non-federal sources via linear regression analyses.  *See, e.g.*, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 671 (9th Cir. 2022) (en banc).  An abatement model could use linear regression analysis of the type used in *Bumble Bee Foods* to determine the population-level impact of Defendants' alleged harms caused by their work in the non-federal market only, which courts using existing adversarial rules of procedure are competent to adjudicate.  *See id.*  Moreover, comparative fault calculations are of the type that courts regularly adjudicate in the tort context.  Though perhaps difficult, courts frequently preside over complex damages calculations in the mass tort context with the guidance of expert reports that must undergo scrutiny through the *Daubert* and cross-examination processes.

Even if *3M* were correct on its unique facts, the facts before us are different.  Unlike pollution discharged into a waterway in which the source of the contaminant might be difficult to identify, controlled substances such as opioids are highly regulated by the Controlled Substances Act and Drug Enforcement Administration which require a "closed system of distribution" for controlled substances.  *Purdue Pharma L.P.*, 620 F. Supp. 3d at 950–51.  Therefore, it

appears highly plausible that opioid prescriptions dispensed are readily traceable back to each entity as pharmacies must retain extensive records of all prescriptions they dispense by law.  *See id.*  Courts might use such a method to determine the origins of the alleged public nuisance harm derived from work for non-federal clients and then calculate how much abatement liability each defendant would have to contribute as a result.

Defendants' next argument about state court's apportionment of the abatement harms triggering the federal officer removal statute relies on claims that do not exist. Plaintiff here, like the States in *3M*, expressly disclaimed any reliance on claims related to work for federal officers. Therefore, Plaintiff has unilaterally narrowed its amended complaint to excise all charged conduct related to work for federal officers and any relief that could flow from that. Defendants, accordingly, cannot assert a defense to claims "that simply do not exist."  *Batchelor*, 185 F. Supp. 3d at 1364–65; *see also Puerto Rico*, 119 F.4th at 187.  And just because a state court might have to calculate abatement for a public nuisance that might have some contribution from separate actions not charged in the complaint taken at the behest of federal officials, that is not enough to trigger the federal officer removal statute.

Defendants' theory would also create analytical incongruities for claims where different entities create the same type of harms that intermingle in the world.  For example, say Company A produces a product at the direction of the federal government, whereas Company B produces that same product pursuant to a contract with a private entity with no relation to the federal government.  Company A's and Company B's products both intermingle in a river and pollute it.  A plaintiff only wishes to sue Company B in state

court on state law causes of action. Company B would have no grounds to remove the case to federal court pursuant to the federal officer removal statute because there would be no causal nexus between its actions and any federal officer, nor could Company B allege any colorable federal defense. Therefore, if the plaintiff prevailed against Company B, the state court would have to adjudicate how much pollution is attributable to Company B, despite the presence of the same type of pollution from Company A's identical federal product intermingled in the river. Nevertheless, it is not "impossible" for the state court to competently engage in this type of calculation, nor is there a basis for Company B to invoke the federal officer removal statute.

An analogous situation arises here. Plaintiff has only sued Defendants for the part of their business dealing with non-federal entities. Defendants' theory of the case has not demonstrated that the Defendants' actions taken pursuant to contracts with the federal government satisfy the causal nexus prong of the federal officer removal statute, even under the "relating to" standard. Therefore, the mere fact that Defendants' alleged public nuisance harms stem from the same type of federal and non-federal work and intermingled in the world is insufficient to enable federal officer removal. To argue that it is "impossible" for a state court to apportion those harms without infringing federal rights does not apply in the scenario before us any more than it would apply in the hypothetical scenario described above.

\*          \*          \*

In light of Plaintiff's disclaimer, Defendants have not alleged enough to benefit from the federal officer removal statute. California public nuisance law does not *require* that Plaintiff include claims against Defendants for their federal

agency work. Plaintiff, as "master of the claim" may avoid federal jurisdiction by limiting its claims to avoid triggering federal officer removal jurisdiction. *See Caterpillar*, 482 U.S. at 392. Moreover, Defendants' theory of the case does not plausibly satisfy the causal nexus prong's "relating to" element in the federal officer removal statute. Actions Defendants took on behalf of their non-federal clients were not done at the direction of or in relation to orders from federal officials. Finally, Defendants' federal and non-federal work is divisible and can be analyzed independently such that any intermingling of the alleged public nuisance harms does not implicate the federal officer removal statute. We therefore hold that remand in this case was appropriate.

**AFFIRMED.**